**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**BEVERLY L. RUSSELL,**

                              **Plaintiff,**

    vs.                                                **5:13-cv-1030
                                                         (MAD/CFH)**

**CAROLYN W. COLVIN, Commissioner of
Social Security Administration,**

                              **Defendant.**
_____

**APPEARANCES:**                                  **OF COUNSEL:**

**LEGAL SERVICES OF**                  **CHRISTOPHER CADIN, ESQ.**
**CENTRAL NEW YORK, INC.**
472 S. Salina Street, Suite 300
Syracuse, New York 13202
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**    **MONIKA K. CRAWFORD, ESQ.**
Office of General Counsel
26 Federal Plaza, Room 3904
New York, New York 10278
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's ("Commissioner") decision to deny her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This matter was referred to United States Magistrate Judge Christian F. Hummel for a Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d), familiarity with which is assumed. Magistrate Judge Hummel recommended that this Court affirm the Commissioner's decision denying Plaintiff's application for benefits and dismiss the complaint.

*See* Dkt. No. 15. Presently before the Court are Plaintiff's objections to the Report-Recommendation and Order. *See* Dkt. No. 16.

## II. BACKGROUND

### A. Procedural History

Plaintiff applied for DIB and SSI on April 30, 2012, alleging a disability onset date of September 27, 2007. *See* Dkt. No. 9, Administrative Transcript ("T."), at 68, 76, 120-132, 142-44. The applications were initially denied on August 6, 2012. T. at 84-89. Plaintiff requested a hearing, which was held on December 5, 2012 before Administrative Law Judge ("ALJ") Bruce S. Fein. T. at 35-67, 90-91. The ALJ issued a decision on January 25, 2013, finding that despite severe impairments – a seizure disorder, depression, and anxiety – Plaintiff was not disabled. T. at 12. Request for review by the Appeals Council was timely filed and, on June 28, 2013, the request was denied, rendering the ALJ's decision the Commissioner's final decision. T. at 1. Plaintiff commenced this action for judicial review of that decision by filing a complaint on August 22, 2013, *see* Dkt. No. 1, and both parties moved for judgment on the pleadings. *See* Dkt. Nos. 11, 14.

## III. DISCUSSION

### A. Standard of Review

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court must examine the Administrative Transcript to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), *cert. denied*, 559 U.S. 962 (2010); *Schaal v. Apfel*,

134 F.3d 496, 500-01 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations and quotations omitted).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court engages in a *de novo* review of any part of a Magistrate Judge's Report and Recommendation to which a party specifically objects. Failure to timely object to any portion of a Magistrate Judge's Report and Recommendation operates as a waiver of further judicial review of those matters. *See Roland v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993) (quoting *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989)). "To the extent, . . . that [a] party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." *Watson v. Astrue*, No. 08 Civ. 1523, 2010 WL 1645060, *1 (S.D.N.Y. Apr. 22, 2010) (citing, *inter alia, Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) (observing that "[r]eviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing

of the same arguments set forth in the original petition") (citation and internal quotation marks omitted)).

**B.     Report and Recommendation**

In the Report-Recommendation, Magistrate Judge Hummel found that substantial evidence supported the ALJ's determination that Plaintiff's seizure disorder did not meet the criteria for an impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1, 11.03, for non-convulsive epilepsy ("listed impairment"). *See* Dkt. No. 15. Magistrate Judge Hummel carefully reviewed the evidence submitted and found it did not establish that Plaintiff had seizures occurring more frequently than once weekly in spite of at least three months of prescribed treatment. *See* Dkt. No. 15.

The Report-Recommendation and Order sets forth that there was substantial evidence to support that Plaintiff retained sufficient residual functional capacity ("RFC") to perform light work. *See* Dkt. No. 15. Magistrate Judge Hummel found the ALJ's determination to give significant weight to the opinions of Dr. Ganesh and Dr. Nobel, reduced weight to the medical source statement completed by Dr. Pylman, and minimal weight to the medical source statement completed by the consultive examiner, Dr. Caldwell, was appropriate. *See* Dkt. No. 15. Magistrate Judge Hummel reviewed Plaintiff's contentions that the ALJ's credibility assessment of Plaintiff and submitted third party statements were not properly evaluated, and he found that credibility was assessed under the correct legal standard and was supported by substantial evidence. *See* Dkt. No. 15.

Magistrate Judge Hummel also found that the RFC was determined under the correct legal standards and based upon substantial medical evidence that Plaintiff was able to perform light work and was able to perform past relevant work ("PRW"). *See* Dkt. No. 15. Finally, Magistrate

4

Judge Hummel addressed the ALJ's alternative finding that Plaintiff was able to perform work which existed in significant numbers in the national economy. Specifically, the Report and Recommendation reviewed the legal standard for when a vocational expert is required and found they were correctly applied. *See* Dkt. No. 15. Magistrate Judge Hummel agreed with the ALJ's finding that a vocational expert was not necessary because Plaintiff's occupational base was not significantly eroded by her loss of consciousness. *See* Dkt. No. 15.

**C.     Analysis**

Having carefully reviewed Magistrate Judge Hummel's thorough Report-Recommendation and Order, the parties' submissions, and the applicable law, the Court finds no clear error. Except as discussed below, the Court finds that Plaintiff's objections to be conclusory or repetitive of the original arguments made to Magistrate Judge Hummel. Magistrate Judge Hummel's Report-Recommendation and Order contains a careful analysis of the Commissioner's determination to deny Plaintiff benefits and explains how the challenged determination was based on correct legal principles and supported by substantial evidence in the record.

### *1. Plaintiff's objections*

Plaintiff raised two new claims in her objections to the Report-Recommendation and Order that were not raised in her motion to Magistrate Judge Hummel and, accordingly, were not address in the Report-Recommendation and Order. The Court finds that Plaintiff's newly-raised claims are rejected because they were not presented to Magistrate Judge Hummel and, therefore, not timely made. Rule 72(b)(2) of the Federal Rules of Civil Procedure permits a party to file specific written objections to the proposed findings and recommendations of the Magistrate Judge, but "Rule 72(b) does not provide that new claims may be raised in objections to a report and recommendation." *See Pierce v. Mance*, No. 08 Civ. 4736, 2009 WL 1754904, *1 (S.D.N.Y.

June 22, 2009). New theories may not be presented with, or in the form of, objections, and these new theories should be rejected. *See Kaminski v. City of Utica*, No. 9:10CV0895, 2012 WL 4486071, *1-2 (N.D.N.Y. Sept. 27, 2012) (citing *Green v. City of New York*, No. 05CV429, 2010 WL 148128, *4 (E.D.N.Y. Jan. 14, 2010)); *Calderon v. Wheeler*, No. 9:06CV0963, 2009 WL 2252241, *1, n.1 (N.D.N.Y. July 28, 2009); *Pierce*, 2009 WL 1754904, *1. "If the Court were to consider formally these untimely contentions, it would unduly undermine the authority of the Magistrate Judge by allowing litigants the option of waiting until a Report is issued to advance additional arguments." *Abu-Nassar v. Elders Futures, Inc.*, No. 88 Civ. 7906, 1994 WL 445638, *4, n.2 (S.D.N.Y. Aug. 17, 1994).

In the alternative, the Court has considered Plaintiff's newly-made claims, and finds as follows: (1) substantial medical evidence supports the ALJ's determination that Plaintiff's impairments of obesity, osteoarthritis, and personality disorders were not severe impairments singly or in combination; and (2) the Residual Functional Capacity ("RFC") determination was accurate, complete, and supported by substantial evidence.

### *a. Obesity, osteoarthritis, and personality disorders*

For purposes of both DIB and SSI, a person is disabled when he is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). There is a five-step analysis for evaluating disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical

6

> evidence, the claimant has an impairment which is listed in
> Appendix 1 of the regulations. If the claimant has such an
> impairment, the [Commissioner] will consider him disabled without
> considering vocational factors such as age, education, and work
> experience; the [Commissioner] presumes that a claimant who is
> afflicted with a "listed" impairment is unable to perform substantial
> gainful activity. Assuming the claimant does not have a listed
> impairment, the fourth inquiry is whether, despite the claimant's
> severe impairment, he has the residual functional capacity to
> perform his past work. Finally, if the claimant is unable to perform
> his past work, the [Commissioner] then determines whether there is
> other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (citations omitted). The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step. *Id.*

Step two of the five-step sequential evaluation for determining whether a person is disabled, referred to as the "severity regulation", states:

> If you do not have any impairment or combination of impairments
> which significantly limits your physical or mental ability to do basic
> work activities, we will find that you do not have a severe
> impairment and are, therefore, not disabled. We will not consider
> your age, education, and work experience.

20 C.F.R. §§ 404.1520(c); 416.920(c), *see Bowen v. Yuckert*, 482 U.S. 137, 140-141 (1987). The phrase "basic work activities" are "the abilities and aptitudes necessary to do most jobs" and include

> [p]hysical functions such as walking, standing, sitting, lifting,
> pushing, pulling, reaching, carrying, or handling... seeing, hearing,
> and speaking . . . [u]nderstanding, carrying out, and remembering
> simple instructions . . . [u]se of judgment . . . [r]esponding
> appropriately to supervision, co-workers and usual work situations .
> . . [d]ealing with changes in a routine work setting.

7

20 C.F.R. §§ 404.1521(b), 416.921(b); *see Bowen*, 482 U.S. at 141. Plaintiff contends that the ALJ erred when he did not include obesity, osteoarthritis, and personality disorders among her severe impairments at step two of the disability analysis. *See* Dkt. No. 16, at 5-8. There is substantial evidence to support the ALJ's determination that Plaintiff's medical conditions of obesity, osteoarthritis, and personality disorders did not meet the severity threshold, singly or in combination.

The ALJ will only consider those impairments that Plaintiff claims to have or those impairments contained within the evidence submitted. *See* 20 C.F.R. § 404.1512(a); 416.912(a); *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 275-276 (N.D.N.Y. 2009). "Furthermore, at steps two and three, a claimant bears the burden of showing she is disabled under the Act." *Rockwood*, 614 F. Supp. 2d at 276. With regard to Plaintiff's claims for personality disorders, Plaintiff has not previously ever claimed that antisocial personality disorder or borderline personality disorder was among her impairments, severe or otherwise. T. at 148, 192-195. Further, the Court has reviewed the evidence submitted by Plaintiff and concluded that there was no evidence of an antisocial personality disorder or borderline personality disorder within her medical evidence submitted, including her mental health records and evaluations. The medical records submitted do not reflect that Plaintiff was ever suspected of suffering from, diagnosed with, or treated for antisocial personality disorder or borderline personality disorder. T. at 201-573. Since there is no evidence in the records and Plaintiff has not alleged that she has such an impairment, it was not error that the ALJ did not specifically address antisocial personality disorder or borderline personality disorder within his decision. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *Yancey v. Apfel*, 145 F.3d 106, 114 (2d Cir. 1998) (finding that the ALJ properly investigated and developed the record and that there was no need for a consultative examination where there was no evidence

8

of a psychiatric or psychological impairment); SSR 96-4P, 1996 WL 374187 (clarifying "that: 1. A 'symptom' is not a 'medically determinable physical or mental impairment' and no symptom by itself can establish the existence of such an impairment. 2. In the absence of a showing that there is a 'medically determinable physical or mental impairment,' an individual must be found not disabled at step 2 of the sequential evaluation process. No symptom or combination of symptoms can be the basis for a finding of disability . . .").

Although Plaintiff did not claim disability based upon obesity and osteoarthritis, T. at 148, 192-195, the ALJ extracted from the submitted medical record evidence that obesity and osteoarthritis were recorded in Plaintiff's medical records. T. at 13. The ALJ reviewed the evidence and did not find that these conditions had risen to the level of severe impairment, stating that "[t]he longitudinal medical evidence in the record indicates that [obesity and osteoarthritis] do not impose limits in the claimant's ability to engage in basic work activities." T. at 13. In determining the RFC, the ALJ remarked that Plaintiff's obesity was observed, noted, or commented on by every medical examiner who has offered an opinion about her, and, absent a qualifying statement to the contrary, the examiners necessarily considered the claimant's obesity. T. at 18. The ALJ stated that by weighing the examiners' medical opinions, he has also fully considered Plaintiff's obesity in making his decision. T. at 18-19. Accordingly, the ALJ gave appropriate consideration to plaintiff's obesity in his decision. *See Shorter v. Comm'r of Soc. Sec.*, No. 5:12-cv-1502, 2014 WL 1280459, *12 (N.D.N.Y. Mar. 27, 2014) (finding that examining physicians would have factored the plaintiff's known obesity into their opinion).

Plaintiff asserts that her osteoarthritis causes limiting pain in her chest, back, arms, and legs. T. at 7. As noted by the ALJ, there was not enough documentation of osteoarthritis to show a severe impairment. T. at 13. The medical evidence submitted by Plaintiff reveals that she

underwent physical examinations, including musculoskeletal assessments at hospital visits, doctors' appointment, and consultation examinations, and there were no clinical signs or diagnoses that Plaintiff suffered from osteoarthritis, T. at 202, 204, 214, 217, 221, 233, 242, 259, 319, 323, 329, 349, 365, 371, 377, 385, 394, 401, 429, 435, 442, 448, 454, 460, 471, 475-476, 489, 497, 501, 504, 507, 516, 519, 522, 525, 528, 534, 537, 540, 543, 546, 549, 557, except a brief entry by Dr. Pylman in his medical assessment of ability to do work-related activities. T. at 464. Notably, Dr. Pylman makes no mention of osteoarthritis within his 108 pages of treatment records. T. at 467-573.

The ALJ outlined Plaintiff's physical capabilities as described by Dr. Ganesh, who opined that Plaintiff had no limitations with sitting, standing, walking, or the use of her upper extremities, T. at 17, and Dr. Pylman who opined that Plaintiff was able to walk and stand for seven hours as well as sit for eight hours in an eight-hour work day. T. at 17. Based upon the frequent medical examinations that Plaintiff underwent and the absence of any mention of osteoarthritis together with the physical capabilities outlined by Dr. Ganesh, the Court finds there is substantial evidence to support the ALJ's determination that osteoarthritis was not a severe impairment. *See Giles v. Astrue*, No. 06CV702, 2008 WL 4852947, *6 (W.D.N.Y. Nov. 6, 2008) (finding that although the plaintiff had a history of osteoarthritis, a treating physician's description of his physical limitations as unremarkable and another physician's description as having only mild limitation on heavy lifting, pulling, pushing, and tugging was substantial evidence that the plaintiff was not physically disabled).

To the extent that Plaintiff also objected that obesity, osteoarthritis, and personality disorders were not appropriately considered in combination at step three of the analysis, *see* Dkt. No. 16 at 8, the Court finds that the ALJ properly considered Plaintiff's impairments in

combination. The ALJ summarized Plaintiff's medical records, separately addressed Plaintiff's alleged severe conditions, and expressly stated Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment; and, therefore, the Court concludes that proper consideration was given to the combined effects of Plaintiff's impairments. *See Martise v. Astrue*, 641 F.3d 909, 924 (8th Cir. 2011).

It is also significant that any error in not finding the above-referenced impairments to be severe, is harmless error. Plaintiff had other determined severe impairments allowing the ALJ to proceed with the remaining steps of the disability analysis, T. at 12-21, and the ALJ gave consideration to the limiting effects of Plaintiff's impairments – severe and non-severe – when determining her RFC. T. at 12-21. The purpose of the severity regulation was to create a "threshold determination of the claimant's ability to perform basic, generically defined work functions, without at this stage engaging in the rather more burdensome medical-vocational analysis required by [42 U.S.C.] § 423(d)(2)(A)[.]" *Dixon v. Shalala*, 54 F.3d 1019, 1022 (2d Cir. 1995). In *Bowen*, the Supreme Court upheld this regulation to screen out *de minimis* claims – those claims where there are "slight abnormalities that do not significantly limit any 'basic work activity[.]'" *Bowen*, 482 U.S. at 158 (O'Connor, J. concurring). Here, Plaintiff's impairments – albeit not obesity, osteoarthritis, and personality disorders – were found to be severe, and her claims survived the threshold determination. T. at 12. Plaintiff's claims proceeded and underwent a medical-vocational analysis, which included consideration of all of Plaintiff's impairments. T. at 15-20. The ALJ specifically stated that he considered the limiting effects of Plaintiff's non-severe impairments when determining her RFC. *See* T. at 13. Under these circumstances, any error is harmless. *See Reices-Colon v. Astrue*, 523 Fed. Appx. 796, 798 (2d Cir. 2013) (holding that any alleged error determining impairments to be non-severe was harmless

where other severe impairments were identified and the ALJ proceeded with the disability analysis giving consideration to the non-severe impairments in the subsequent steps) (citations omitted); *Bell v. Colvin*, No. 7:12CV1813, 2015 WL 224662, *7 (N.D.N.Y. Jan. 15, 2015).

### *b. Residual Functional Capacity determination*

Plaintiff contends that the RFC determination was incomplete because it did not specify the frequency of Plaintiff's need to alternate sitting and standing as is required by Program Operations Manual System DI 25015.020(B)(6), published at SSR 96-9P, 1996 WL 374185. This argument is unavailing because the ruling relates to individuals that are prevented from performing past relevant work ("PRW"), and the ruling applies to evaluating an individual's ability to do less than full range of sedentary work. *See* SSR 96-4P, 1996 WL 374187. The Plaintiff was found by the ALJ to be able to perform PRW and that she has the RFC to perform light work and, accordingly, the ruling is not relevant here.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-state reasons, the Court hereby

**ORDERS** that the Report-Recommendation and Order of Magistrate Judge Christian F. Hummel, filed September 16, 2014, is **ADOPTED** in its entirety for the reasons stated therein; and the Court further

**ORDERS** that the decision denying benefits is **AFFIRMED**; and the Court further

**ORDERS** that Plaintiff's motion for judgment on the pleadings is **DENIED**, and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 11, 2015
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge